**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorneys for Plaintiff,
*Christopher Worthington*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CHRISTOPHER WORTHINGTON, individually and on behalf of others similarly situated,

Plaintiffs,

v.

LOANDEPOT.COM, LLC,

Defendant.

Case No.: 8:26-cv-3383

**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227 *et seq*.**

**JURY TRIAL DEMANDED**

Plaintiff Christopher Worthington ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint, by and through his attorneys, against Defendant Loandepot.com, LLC ("Defendant") and in support thereof, state as follows:

//

//

KAZEROUNI LAW GROUP, APC

## INTRODUCTION

1. Plaintiff brings this class action against Defendant to secure redress for Defendant's multiple violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*.

2. Specifically, Defendant has violated the TCPA by initiating multiple, unsolicited telemarketing calls to Plaintiff's cell phone after received a written revocation of consent to be contacted for the purpose of promoting its mortgage and refinancing services.

3. Through this action, Plaintiff seeks damages and injunctive relief to halt Defendant's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff. Plaintiff also seeks statutory damages and any other available legal and equitable remedies.

4. Plaintiff makes these allegations on information and belief, except for those allegations that pertain to a certain Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

6. Unless otherwise stated, all conduct engaged in by Defendant took place in the Central District of California.

7. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction as this case arises under a federal statute.

9. This Court has personal jurisdiction over the Defendant because Defendant is located in the State of California.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of events and injury giving rise to each Plaintiff's claims occurred in or originated

from this District.

**PARTIES**

11. Plaintiff is a natural person and resident of New Jersey.

12. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

13. Defendant is a domestic limited liability company with a principal street and mailing address of 6561 Irvine Center Drive, Irvine, CA 92618.

14. Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

**THE TELEPHONE CONSUMER PROTECTION ACT**

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

16. Specifically, the TCPA restricts telephone solicitations (*i.e.*, telemarketing) and the use of automated telephone equipment, as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1] The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems–principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

17. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.

---

[1] According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.



KAZEROUNI LAW GROUP, APC

The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption.

18. Therefore, all pre-recorded telemarketing calls to residential lines and all pre-recorded calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

19. As of October 16, 2013, unless the recipient has given prior express written consent,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.
- Prohibit solicitations to residences that use an artificial voice or a recording.
- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.
- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).



KAZEROUNI LAW GROUP, APC

- Prohibit autodialed calls that engage two or more lines of a multi-line business.
- Prohibit unsolicited advertising faxes.
- Prohibit certain calls to members of the National Do Not Call Registry.

20. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

21. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

22. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

## FACTUAL ALLEGATIONS

23. Defendant is a consumer lending company offering mortgage and equity loans.

24. In Defendant's overzealous attempt to market its services, however,



KAZEROUNI LAW GROUP, APC

Defendant knowingly and willfully made (and continues to make) unsolicited telemarketing phone calls after receiving written revocation of consent to be contacted from call recipients.

25. Through its methods, Defendant has invaded the personal privacy of Plaintiff and members of the Classes defined below.

26. Upon information and belief, Defendant has intentionally and repeatedly violated the TCPA, and will continue to do so in violation of Plaintiff's and the Class members rights absent judicial relief and legal redress.

## FACTUAL ALLEGATIONS

27. At all times relevant to this Complaint, Plaintiff was assigned, and was the owner of, a cellular telephone number ending in -5724 (the "Cell" or "Cell Phone").

28. Plaintiff is the sole user and/or subscriber of his Cell Phone and is financially responsible for phone service to his Cell Phone.

29. Plaintiff's Cell is used *solely* for residential purposes.

30. Rather, the Cell is Plaintiff's personal phone that he uses for personal, family, and household use.

31. Plaintiff relies on his Cell Phone to communicate with friends and family.

32. Plaintiff also *solely* performs domestic tasks with his Cell including sending and receiving emails as well as text messages.

33. For instance, Plaintiff uses his Cell to order food deliveries.

34. Plaintiff also uses his Cell to search various websites for *non-business* related hobbies and topics of interest to him.

35. Plaintiff does **not** use his Cell for business transactions.

36. Plaintiff's employer does **not** pay Plaintiff's phone bill.

37. Plaintiff does **not** use the Cell for business or commercial purposes.

38. Plaintiff's Cell Phone is **not** registered in the name of a business.

39. In April of 2025, Plaintiff inquired about a refinance with Defendant.

40. Because Defendant's rates were unfavorable, however, Plaintiff opted not



KAZEROUNI LAW GROUP, APC

to utilize Defendant's services.

41. Specifically, on October 3, 2025, Plaintiff advised that he no longer consented to be contacted by Defendant during a telephone call with one of Defendant's representatives named Amanda.

42. Later that same day, Plaintiff unequivocally expressed his revocation of any consent or permission that he may have given to Defendant in writing, via email.

43. In his email to Defendant, Plaintiff stated that he "no longer consent[ed] to Loan Depot, or any of its agents, subsidiaries, or employees to contact [Plaintiff] by email, phone or text."

44. On October 6, 2025, Plaintiff received a response from Alan Wilson, a Customer Care Representative employed by Defendant stating, "I have added your phone number to our DNC list so you will no longer receive calls from us."

45. However, despite this representation, Defendant did continue to contact Plaintiff.

46. Specifically, Defendant sent the following text messages to Plaintiff on the following dates:

- On October 16, 2025 – "loanDepot: Rates are changing, and the market moves fast! This may be your chance to save. Reply YES for a no-obligation quote."
- On October 20, 2025 – "loanDepot: Rates are changing, and the market moves fast! This may be your chance to save. Reply YES for a no-obligation quote."
- On October 30, 2025 – "loanDepot: Mortgage rates dropped-Get your personalized rate quote View Your Rate https://ldi.to/p/Xc0sMhX"
- On November 8, 2025 – "loanDepot: Mortgage rates dropped-this may be your chance to save. Reply YES to get your personalized rate quote"
- On December 9, 2025 – "Need some more space to host holiday dinners? Get the cash you need for those renovations with loanDepot. Click here to



KAZEROUNI LAW GROUP, APC

start: https://ldi.to/p/tbwuoCPB/kW7wQd"

- Also on December 9, 2025 – "Need some more space to host holiday dinners? Get the cash you need for those renovations with loanDepot. Click here to start: https://ldi.to/p/sHejOWev/IwjSyv"
- On December 11, 2025 – "Rates are still near the lowest they have been in 3 years*. loanDepot could help you tap into your home's equity to get cash for the holidays, or even save monthly with a potentially lower rate**. Click here to get started https://ldi.to/p/32bxLWWH/kW7wQd"

47. Finally, in response to the December 11, 2025 text message, Plaintiff again expressed his revocation of consent to be contacted, stating, "Please take me off your list I don't consent to being contacted."

48. However, again Plaintiff revocation of consent was ignored by Defendant.

49. Specifically, Defendant sent the following text messages to Plaintiff on the following dates:

- On December 12, 2025 – "Rates are still near the lowest they have been in 3 years*. loanDepot could help you tap into your home's equity to get cash for the holidays, or even save monthly with a potentially lower rate**. Click here to get started https://ldi.to/p/2PnmhxKj"
- On December 15, 2025 – "Wish your kitchen had more space? Get cash for renovations with loanDepot. Click the link to get started https://ldi.to/p/QXiQTHGU"
- Also on December 15, 2025 – "Wish your kitchen had more space? Get cash for renovations with loanDepot. Click the link to get started https://ldi.to/p/L0s43JEY"
- On December 19, 2025 – "With mortgage rates at near 3 year lows*, now could be a great time to potentially save on monthly bills or get cash from your home's equity with loanDepot. Click the link to get started https://ldi.to/p/6PwYrzcQ"



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

- On December 30, 2025 – "loanDepot New Year's sales event*. Save $1,500 off a $300,000 refinance loan**. How much could YOU save? Call (877) 433-4103 by 1/5/26."
- On January 5, 2026 – "Last chance: loanDepot New Year's event* ends today. You could still save $1,500 off a $300,000 refinance loan**. Find out how much you could save. Call today! (877) 433-4103"
- On March 8, 2026 – "loanDepot: Rates are dropping! You've got options, and we'd love to show them to you. Reply YES for a no-obligation quote."
- On July 1, 2026 – "loanDepot: Rates are changing, and the market moves fast! This may be your chance to save. Reply YES for a no-obligation quote."
- On July 6, 2026 – "loanDepot: Rates are changing, and the market moves fast! This may be your chance to save. Reply YES for a no-obligation quote."
- On September 9, 2026 – "loanDepot: Rates are changing, and the market moves fast! This may be your chance to save. Reply YES for a no-obligation quote."

50. Defendant sent over a dozen post-revocation unsolicited marketing text messages to Plaintiff prior to the filing of the Complaint and has not made any efforts to cease communications.

51. Plaintiff reserves the right to allege violations for any additional text messages or phone calls that he receives after the filing of the Complaint.

52. Defendant's text messages to Plaintiff constitute telephone solicitations because Defendant encouraged the future purchase or investment in Defendant's consumer lending services.

53. Defendant sent the text messages within this judicial district, and therefore, Defendant's violations of the TCPA occurred within this district.

54. Plaintiff sent Defendant a written revocation of consent and requested to

no longer be contacted by Defendant.

55. Defendant not only received Plaintiff's revocation request, but confirmed to Plaintiff that his phone number had been placed on Defendant's DNC list and would no longer receive any communication from Defendant.

56. Nevertheless, Defendant continued to contact Plaintiff, in the manner described above and in violation of the TCPA.

57. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

58. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

59. Additionally, Defendant's text messages took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes because of the phone's memory being taken up.

**CLASS ACTION ALLEGATIONS**

60. Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following Class, which are defined as follows:

> All persons within the United States: (1) who received a telephone solicitation; (2) made by or on behalf of Defendant; (3) for the purpose of promoting Defendant's goods or services, (4) after making a do-not-call request to Defendant; (5) within the four years prior to the filing of the Complaint.

61. Excluded from the Class are Defendant, its officers and directors, members of its immediate families and its legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

62. Plaintiff reserves the right to redefine the Classes and to add subclasses as



KAZEROUNI LAW GROUP, APC

appropriate based on discovery and specific theories of liability.

63. Further, Plaintiff and members of the Classes were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class Members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class Members who opted out from any communication from Defendant, thereby causing annoyance to Plaintiff and the Class and also invading the privacy of Plaintiff and the Class. Plaintiff and the Class Members were damaged thereby.

64. Numerosity: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a failure to adhere to its own DNC list and to cease contacting call recipients after receiving a revocation request. Plaintiff believes, at a minimum, there are greater than forty (40) Class Members. Plaintiff believes that the members of the Class are so numerous that joinder of all members of the Class are impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

65. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's phone call logs and call records.

66. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

67. Ascertainability: The members of the Class are ascertainable because the Class are defined by reference to objective criteria. In addition, the members of the



KAZEROUNI LAW GROUP, APC

Class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and/or by third parties.

68. Typicality: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class..

69. Plaintiff and members of the Class each received at least one telephonic sales call or text message, advertising Defendant's services, after indicating a revocation of any consent to be contacted by Defendant, which Defendant made or caused to be made to Plaintiff and the members of the Class.

70. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff has had to suffer the burden and invasion of privacy of receiving unsolicited text messages to Plaintiff's cellular telephone from Defendant while Defendant had no express written consent to contact Plaintiff. Thus, Plaintiff's injuries are typical to Class Members.

71. Plaintiff's claims, and the claims of the members of the Class, originate from the same conduct, practice and procedure on the part of Defendant.

72. Plaintiff's claims are based on the same theories, as are the claims of the members of the Class.

73. Plaintiff and Class Members were harmed by the acts of Defendant in at least the following ways: Defendant harassed Plaintiff and Class Members by illegally placing unsolicited calls to their cellular phones without prior express consent. Plaintiff and the Class Members suffered injuries, including invasion of privacy, and were damaged thereby.

74. Adequacy: Plaintiff is qualified to and will fairly and adequately protect the interests of the members of the Class with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Class. Plaintiff will vigorously pursue the claims of the members of the Class. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed Class Counsel, are well-versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the TCPA. Plaintiff's counsel will assert, protect and otherwise represent the members of the Class. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

75. Predominance: The questions of law and fact common to the members of the Class predominate over questions that may affect individual members of the Class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

76. Commonality: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

- What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing phone calls and text messages;
- Whether Defendant initiated unsolicited phone calls and text messages to Plaintiff and Class members;
- How Defendant obtained the numbers of Plaintiff and Class members;
- Whether Defendant can meet its burden of showing that it had prior express written consent to conduct such phone calls;
- Whether Defendant willfully or knowingly violated the TCPA;
- Whether Plaintiff and the Class members were damaged thereby, and the

extent of damages for such violation; and

- Whether Plaintiff and the members of the Classes are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;
- Whether Plaintiff and members of the Classes are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and
- Whether Plaintiff and the Classes are entitled to any other relief.

99. Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

- If brought and prosecuted individually, the claims of the members of the Class would require proof of the same material and substantive facts.
- The pursuit of separate actions by individual members of the Class would, as a practical matter, be dispositive of the interests of other members of the Class, and could substantially impair or impede their ability to protect their interests.
- The pursuit of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.
- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Class.
- The damages suffered by each individual member of the Class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Class to redress the wrongs done to them.
- Absent a class action, most Class Members would likely find the cost of



KAZEROUNI LAW GROUP, APC

litigating their claims prohibitively high and would therefore have no effective remedy at law.

- The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.
- There will be little difficulty in the management of this action as a class action.

100. Class-Wide Injunctive Relief: Moreover, class certification is warranted because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA of statutory damages and to be free from unwanted phone calls.

101. Defendant has acted or refused to act on grounds generally applicable to the members of the Class, making final declaratory or injunctive relief appropriate.

102. Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class Members' claims, few, if any, Class Members could afford to seek legal redress for the wrongs complained of herein.

103. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with applicable law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal.

Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

104. Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

105. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

**FIRST CAUSE OF ACTION**

**VIOLATIONS OF THE TCPA, 47 U.S.C. §§ 227, *ET SEQ.***

**[ON BEHALF OF PLAINTIFF AND THE CLASS]**

106. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

107. As alleged with specificity herein, Plaintiff made requests to Defendant not to receive telemarketing.

108. As alleged with specificity herein, Defendant failed to honor Plaintiff's requests.

109. Based on the foregoing, Defendant has not instituted procedures for maintaining a list of persons, including but not limited to Plaintiff, who requested not to receive telemarketing, pursuant to 47 C.F.R. § 64.1200(d).

110. Because Plaintiff received more than one telemarketing call in a 12-month period made by Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

111. As a result of Defendant's negligent violations of 47 U.S.C. § 227 (c), Plaintiff and each member of the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

112. Plaintiff and each member of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violations of 47 U.S.C. §§ 227 (c), pursuant to 47 U.S.C. § 227(c)(5).



KAZEROUNI LAW GROUP, APC

113. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel;
- Injunctive relief prohibiting Defendant from engaging in such conduct in the future;
- Statutory damages of $500.00 for Plaintiff and each member the Class for each and every one of Defendant's negligent violations;
- Statutory damages of $1,500.00 for Plaintiff and each member of the Class for each and every one of Defendant's willful or knowing violations;
- A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;
- An award of attorneys' fees and costs to counsel for Plaintiff and the Class;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

## TRIAL BY JURY

Plaintiff is entitled to, and demand, a trial by jury on all issues so triable.

Dated: November 16, 2026

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ David McGlothlin*
David McGlothlin, Esq.
*Attorneys for Plaintiffs*

KAZEROUNI LAW GROUP, APC